IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JANE DOE, and all others similarly situated;<br><br>Plaintiff,<br><br>v.<br><br>BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA; HANK BOUNDS, President of the University of Nebraska, individually and in his official capacity; RONNIE GREEN, Chancellor of the University of Nebraska Lincoln, individually and in his official capacity; JAKE JOHNSON, Assistant Vice Chancellor for Student Affairs, individually; MEAGAN COUNLEY, Deputy Title IX Coordinator for UNL and IX Investigator and/or the Title IX Coordinator for UNL, individually and in her official capacity; TAMI STRICKMAN, Associate to the Chancellor and Title IX Coordinator, individually and in her official capacity; and MARC PEARCE, Assistant Dean for Student Affairs and Administration at the University of Nebraska College of Law, individually;<br><br>Defendants. | 4:20CV3036<br><br>MEMORANDUM<br>AND ORDER |

This matter is before the Court on a Partial Motion for Judgment on the Pleadings (Filing No. 17) filed by defendants Board of Regents of the University of Nebraska ("Board"), Hank Bounds ("Bounds"), Ronnie Green ("Green"), Jake Johnson ("Johnson"), Meagan Counley ("Counley"), Tami Strickman ("Strickman"), and Marc Pearce ("Pearce" and collectively, "defendants")[1] pursuant to Federal Rule of Civil Procedure 12(c), (b)(1),

---

[1] The Court notes Johnson and Pearce are only named individually. The Court has also conformed the docket sheet to the First Amended Complaint (Filing No. 1-1).

and (b)(6) and Nebraska Civil Rule 7.1(a). The defendants move to dismiss the first cause of action in plaintiff Jane Doe's ("Doe") First Amended Complaint in part and moves to dismiss the second cause of action in its entirety. For the reasons stated below, the motion is granted.

I.  BACKGROUND

Doe was a student at the University of Nebraska ("University") College of Law, which receives federal funding and is subject to Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 *et seq*. The individual defendants served in various positions at the University at the relevant time.

On or about September 2018, Doe was sexually assaulted by another law student, John Roe ("Roe"). After the assault, Roe began stalking Doe. When Doe and her friends complained about the stalking to Deanna Pina ("Pina"), another student, Pina reported the stalking to Pearce on or about October 5, 2018.

Upon receiving that report, Pearce spoke with Roe and reported the stalking allegations to the University's Office of Institutional Equity and Compliance ("IEC"). The IEC contacted Pina in the fall of 2018 to discuss her allegations that Roe was stalking Doe and other female students.

Roe's stalking continued. On or about January 9, 2019, Pearce contacted Doe to discuss her fall grades. She told him about the sexual assault. Pearce did not report the assault to the IEC until March. Roe continued to take the same classes as Doe and sit near her.

Counley was assigned to investigate Doe's complaint. On April 30, 2019, she advised Doe the investigation may take more than sixty days. Early in the investigation, Counley scheduled an interview with Roe and his legal counsel. Roe's counsel asked Counley to obtain more information from Doe and her witnesses, which she did. Doe, through counsel, complained of "disparity in the participation and notification between

[Doe's] counsel and [Roe's] counsel." Doe's counsel also advised Counley the information Roe requested was designed "to harass and shame" Doe and her witnesses. Counley responded that she had to ask questions on behalf of both parties.

On or about July 17, 2019, Counley sent Doe and her counsel a draft report that would be available for review for forty-eight hours. Doe's counsel advised Counley that the draft report contained new information and that forty-eight hours was not enough to thoroughly review the report and respond. Doe noted several deficiencies in Pearce's and Counley's handling of her complaint. Doe thought the investigation favored Roe.

On August 16, 2019, Counley issued a decision, finding there had been no policy violation and advising the parties the IEC would not recommend any sanctions. The report did not address all the issues Doe identified.

Doe appealed Counley's decision. Johnson presided over the appeal. On September 24, 2019, Johnson advised Doe that although University policy did not specify an appellate standard of review, the "review should answer the question of whether the University's Investigator could reasonably conclude that, based on the totality of the available information, the complaint should be dismissed."

Johnson upheld Counley's decision. His review did not address the deficiencies Doe raised. Doe alleges Strickman condoned or directed Counley's failures. She further alleges Green and Bounds failed to address the IEC's serious deficiencies in handling Title IX complaints.

As a result of the defendants' "actions and failure to implement and follow Title IX policies," Doe withdrew from the University. She believes other female students have suffered the same fate and "have been discouraged from formally reporting sexual assault and harassment by the Title IX office."

On February 28, 2020, Doe sued the defendants in the District Court of Lancaster County, Nebraska. She amended her pleading a few days later. On April 4, 2020, the defendants removed (Filing No. 1) the action to this Court because Doe raises federal claims. *See* 28 U.S.C. §§ 1331, 1441(a). Having answered (Filing No. 6) on May 8, 2020, the defendants now move for a partial judgment on the pleadings.

## II. DISCUSSION

### A. Standard of Review

On a motion for judgment on the pleadings, the Court accepts the nonmoving party's factual allegations as true and draws all reasonable inferences in her favor. *See Rossley v. Drake Univ.*, 958 F.3d 679, 683 (8th Cir. 2020). To survive such a motion, the complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also In re Pre-Filled Propane Tank Antitrust Litig.*, 893 F.3d 1047, 1056 (8th Cir. 2018) (noting the plausibility standard from *Twombly* and *Iqbal* "applies to Rule 12(c) motions"). A claim is facially plausible if supported by sufficient factual content to allow "the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"Although a moving party, for purposes of the Rule 12(c) motion, concedes the accuracy of the factual allegations in his adversary's pleading, he does not admit other assertions in the opposing party's pleading that constitute conclusions of law, legally impossible facts, or matters that would not be admissible in evidence at trial." 5C Arthur R. Miller, Mary Kay Kane, & A. Benjamin Spencer, <u>Federal Practice & Procedure</u> § 1368 (3d ed. 2004) (footnotes omitted). In deciding such a motion, the Court is "not bound to accept as true '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,' or legal conclusions couched as factual allegations." *McDonough v. Anoka County*, 799 F.3d 931, 945 (8th Cir. 2015) (alteration in original) (quoting *Iqbal*, 556 U.S. at 678).

4

"Judgment on the pleadings 'should be granted only if the moving party has clearly demonstrated that no material issue of fact remains and the moving party is entitled to judgment as a matter of law.'" *Partridge v. City of Benton*, 929 F.3d 562, 564-65 (8th Cir. 2019) (quoting *Whatley v. Canadian Pac. Ry.*, 904 F.3d 614, 617-18 (8th Cir. 2018)).

### B. Title IX

Doe's first cause of action alleges the defendants unlawfully discriminated against her based on her sex. "Title IX prohibits federally funded universities from discriminating against students on the basis of sex." *Rossley*, 979 F.3d at 1191 (citing 20 U.S.C. § 1681(a)). "[B]ut it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009); *accord Kinman v. Omaha Pub. Sch. Dist.*, 171 F.3d 607, 611 (8th Cir. 1999) (joining those circuits holding that "school officials may not be sued in their individual capacity under Title IX" because they do not receive federal funds).[2]

In addition, as the defendants point out, the Eighth Circuit has consistently held that "[a] suit against a government officer in [their] official capacity is functionally equivalent to a suit against the employing governmental entity." *McKay v. City of St. Louis*, 960 F.3d 1094, 1102 (8th Cir. 2020) (quoting *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010)); *see also Doe v. Univ. of Ark. - Fayetteville*, 974 F.3d 858, 866 (8th Cir. 2020) ("An official-capacity claim is a claim against the institution."). Such a claim is properly "dismissed as redundant if the employing entity is also named." *King v. City of Crestwood*, 899 F.3d 643, 650 (8th Cir. 2018).

---

[2]These cases are not new or subject to interpretation in this context. Doe's counsel is reminded that by presenting a pleading to the Court, an attorney "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[,] . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). Failing to comply with Rule 11 can result in sanctions, and can, as happened here, lead to completely unnecessary time and expense to the parties and the Court.

In light of these principles, Doe now concedes her Title IX claim "cannot succeed against the named Defendants"[3] and "withdraws the First Cause of Action against the individually named Defendants."

Accordingly, the defendants' motion is granted on this point. Doe's Title IX claims against Bounds, Green, Johnson, Counley, Strickman, and Pearce are dismissed in their entirety with prejudice. Doe's Title IX claim against the Board remains pending.

### C.     42 U.S.C. § 1983 – Equal Protection

Doe's second cause of action arises under 42 U.S.C. § 1983. To state a claim under § 1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Doe alleges the defendants violated her right to equal protection under the Fourteenth Amendment.

The defendants contend Doe's § 1983 claims are barred by sovereign immunity and qualified immunity. The defendants also emphasize that state entities and state officials acting in their official capacities are not "persons" against whom a § 1983 claim for monetary damages can be brought. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Mayorga v. Missouri*, 442 F.3d 1128, 1131 n.6 (8th Cir. 2006).

In response to the defendants' arguments, Doe clarifies she "does not intend to bring claims against [the Board] or the Named Defendants in their Official Capacities under § 1983 for monetary damages." Those claims are therefore dismissed with prejudice.

In contrast, Doe continues to press her claims for injunctive relief against the Board and Bounds, Green, Counley, and Strickman, in their official capacities, and her equal-

---

[3]The "named Defendants" includes the Board. The Court presumes Doe meant to refer only to the individually named defendants.

6

protection claim against the individual defendants in their individual capacities. The Court takes each in turn.

1. **Injunctive Relief**

The defendants argue Doe's § 1983 claims against the Board and Bounds, Green, Counley, and Strickman, in their official capacities, are barred by the doctrine of sovereign immunity. Sovereign immunity generally shields a state and its agencies from private suits in federal court without its consent. *See*, *e.g.*, *Franchise Tax Bd. of Cal. v. Hyatt*, 587 U.S. ___, ___, 139 S. Ct. 1485, 1496 (2019); *Church v. Missouri*, 913 F.3d 736, 742 (8th Cir. 2019).

The defendants acknowledge that some private-party suits for prospective injunctive relief can—in limited circumstances—proceed against state officials in their official capacities. *See Ex parte Young*, 209 U.S. 123, 159-160 (1908); *281 Care Comm. v. Arneson*, 638 F.3d 621, 632 (8th Cir. 2011) ("Under the *Ex Parte Young* doctrine, a private party can sue a state officer in his official capacity to enjoin a prospective action that would violate federal law."). But they argue that exception does not apply here because Doe does not allege an ongoing equal-protection violation.

They further argue Doe's equitable claims are moot because Doe—having withdrawn from the University—no longer has what the Supreme Court has described as "the requisite 'personal stake in the outcome.'" *Rizzo v. Goode*, 423 U.S. 362, 372-73 (1976) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983) ("The plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical.") (internal quotation marks omitted).

Doe does not address the important distinction between the Board and the state officials. She should have. The *Ex parte Young* doctrine does not apply to state agencies.

*See Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007). And Doe's submissions are devoid of any allegations of waiver or anything else that would reasonably call the Board's assertion of sovereign immunity into question. "Sovereign immunity does not merely constitute a defense to monetary liability or even to all types of liability. Rather, it provides an immunity from suit." *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 766, (2002).

Doe's claim for injunctive relief against the Board is dismissed. That leaves only her claims against Bounds, Green, Counley, and Strickman. Those claims too do not withstand scrutiny.

> To seek injunctive relief, a plaintiff must show that [s]he is under threat of suffering "injury in fact" that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.

*Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *accord Calzone v. Hawley*, 866 F.3d 866, 869 (8th Cir. 2017) (explaining Article III standing to sue each defendant requires a plaintiff to not only "adequately allege[] that he was injured . . . and is likely to be injured in the future," but also "that each defendant caused his injury and that an order of the court against each defendant could redress the injury.").

Similarly, to invoke the *Ex parte Young* exception, a plaintiff must allege "an ongoing violation of federal law and seek[] relief properly characterized as prospective." *281 Care*, 638 F.3d at 632 (quoting *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (alteration in *Verizon*); *see also Papasan v. Allain*, 478 U.S. 265, 277-78 (1986) ("*Young* has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past, as well as on cases in which the relief against the state official directly ends the violation of federal law as opposed to cases in which that relief is intended indirectly to encourage compliance with federal law through

deterrence."). The plaintiff must also show "a sufficient connection between" each defendant and the alleged unlawful conduct. *281 Care*, 638 F.3d at 632.

General allegations against the defendants as a group and allegations based solely on past harms are not enough. *See*, *e.g.*, *Lyons*, 461 U.S. at 102-03; *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) ("[T]he exception is narrow: It applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past."); *Calgaro v. St. Louis County*, 919 F.3d 1054, 1058 (8th Cir. 2019) (upholding judgment on the pleadings on an official-capacity claim against a state official because the plaintiff "did not adequately plead a claim under § 1983"). "'Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects,' or by 'a sufficient likelihood that [the plaintiff] will again be wronged in a similar way.'" *In re Pre-Filled Propane Tank*, 893 F.3d at 1054 (alterations in original) (first quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974), then quoting *Lyons*, 461 U.S. 95 at 111).

Doe contends she has alleged an ongoing violation of federal law because she "has alleged actual injury suffered, policies that continue which have required [her] to withdraw from the University, rendering her unable to continue with the educational path that she had taken due the ongoing conduct of the Defendants." Doe states, "Until the Defendants [sic] course of conduct is rectified, [her] immediate harm continues in the form of the deprivation of her educational opportunity with the Defendant [sic] University."

The argument is unpersuasive. Doe simply fails to adequately account for her withdrawal from the University and the substantial impact that has on her claims for prospective injunctive relief as pleaded. *See*, *e.g.*, *Papasan*, 478 U.S. at 277-78; *McDaniel v. Precythe*, 897 F.3d 946, 950 (8th Cir. 2018) ("[I]f an injury is merely speculative or hypothetical, then it is insufficient to satisfy the constitutional minimum.")

Doe summarily states that her "ongoing deprivation is distinct from that identified in" *Lyons* and *Rizzo*, but she does not explain how. Instead, she quotes references in those cases to a "personal stake in the outcome," "concrete adverseness," and "real and immediate threat of injury" that frankly do nothing to help her cause given her withdrawal from the University.

Doe's reliance on the potential claims of an unidentified putative class of "other female students" at the University likewise falls short. If the sole named plaintiff purporting to represent a putative class fails to establish "the requisite of a case or controversy with the defendants," she cannot seek relief for herself or on behalf of "any other member of the class." *O'Shea*, 414 U.S. at 494; *accord In re SuperValu, Inc.*, 870 F.3d 763, 768 (8th Cir. 2017) ("A putative class action can proceed as long as one named plaintiff has standing."); *see also Doe v. Purdue Univ.*, 928 F.3d 652, 666 (7th Cir. 2019) (concluding a § 1983 plaintiff's attempt to "champion the rights of other" students was "a no-go" because he "plainly lack[ed] standing to assert the [constitutional] rights of other students").

Doe's official-capacity claims against Bounds, Green, Counley, and Strickman are dismissed without prejudice.

### 2. Qualified Immunity

The defendants argue Doe's individual-capacity claims against Bounds, Green, Johnson, Counley, Strickman, and Pearce should be dismissed because they are entitled to qualified immunity. "Qualified immunity shields a government official from liability and the burdens of litigation in a § 1983 action for damages unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable official would have known." *Chambers v. Pennycook*, 641 F.3d 898, 904 (8th Cir. 2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is

10

entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

"To overcome qualified immunity at the pleadings stage, a plaintiff must 'plead[] facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Partridge*, 929 F.3d at 565 (alteration in original) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). "A right is clearly established if—at the time of the alleged violation—'the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful.'" *Mogard v. City of Milbank*, 932 F.3d 1184, 1188 (8th Cir. 2019) (quoting *District of Columbia v. Wesby*, 583 U.S. ___, ___, 138 S. Ct. 577, 589 (2018)).

"Although '[the Supreme] Court's caselaw does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate.'" *Kisela v. Hughes*, 584 U.S. ___, ___, 138 S. Ct. 1148, 1152 (2018) (per curiam) (quoting *White v. Pauly*, 580 U.S. ___, ___, 137 S. Ct. 548, 551 (2017) (per curiam)). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

The defendants contend Doe widely misses the mark at both steps.

As noted above, Doe's § 1983 claim is based on an alleged equal-protection violation. "The Equal Protection Clause requires state actors to treat similarly situated persons alike." *Am. Family Ins. v. City of Minneapolis*, 836 F.3d 918, 921 (8th Cir. 2016). But state officials "do not run afoul of the Equal Protection Clause if they treat dissimilarly situated persons dissimilarly." *Id.* What's more, treating similarly situated people differently is also "not a denial of equal protection unless" the plaintiff shows it includes "an element of intentional or purposeful discrimination." *Batra v. Bd. of Regents of Univ. of Neb.*, 79 F.3d 717, 721 (8th Cir. 1996) (quoting *Snowden v. Hughes*, 321 U.S. 1, 8

11

(1944)); *see also Robbins v. Becker*, 794 F.3d 988, 995 (8th Cir. 2015) ("The good faith of [state] officers and the validity of their actions are presumed; when assailed, the burden of proof is upon the complaining party." (alteration in original) (quoting *Sunday Lake Iron Co. v. Wakefield Twp.*, 247 U.S. 350, 352 (1918))).

Therefore, to state an equal-protection claim, Doe must show, "as a threshold matter," that Bounds, Green, Johnson, Counley, Strickman, and Pearce "treated her less favorably than similarly-situated [students] on account of her" sex. *Bogren v. Minnesota*, 236 F.3d 399, 408 (8th Cir. 2000). "[T]he key requirement is that [she] allege and prove unlawful, purposeful discrimination" by each defendant. *Batra*, 79 F.3d at 722.

The defendants assert Doe abjectly fails to allege a plausible § 1983 claim at every turn. For example, the defendants argue Doe "has not stated—and, cannot state—facts supporting an inference of gender discrimination under the Equal Protection Clause." As the defendants see it, Doe's "general allegations about University policy and procedure" and "conclusory legal assertions . . . fail to state a § 1983 claim against the individually named Defendants" in their individual capacities.

More specifically, the defendants contend Doe "does not allege facts indicating that when compared with other similarly situated individuals, she was treated differently based on an impermissible consideration such as gender, by any of the individually named Defendants." According to the defendants, Doe's "attempt to resuscitate her § 1983 claim" by trying to "reframe her equal protection as being based upon" the defendants' dissimilar treatment of Doe and Roe during the investigation is both too late and contrary to the well-established principle "that individuals be similarly situated in all relevant aspects for purpose of the Equal Protection clause."

The defendants raise several valid questions about whether Doe has pleaded sufficient facts to show that any of the individual defendants has violated her constitutional rights. *See, e.g., Perez v. Does 1-10*, 931 F.3d 641, 646 (8th Cir. 2019) (concluding the

plaintiffs failed to plausibly allege a § 1983 claim where they (1) heavily relied on speculation, legal conclusions, and "non-specific conclusory allegations" against the defendants as a group, (2) failed "to provide enough factual detail to support a plausible claim that any" particular defendant deprived them of their constitutional rights, (3) did not plead "any facts that tie any" defendant to the plaintiffs' protected status, and (4) failed to show how they "were treated differently from any similarly situated" non-protected individuals who were treated more favorably). Doe's allegations that each defendant unlawfully treated her differently than other similarly situated students based on her sex are paper thin at best. She also fails to show she was similarly situated "in all relevant respects," *Bills v. Dahm*, 32 F.3d 333, 335 (8th Cir. 1994), to male students who were treated more favorably.

But even if the Court were to assume Doe plausibly alleged one or more of the defendants violated her constitutional rights, Doe makes absolutely no effort to show her claimed right "was 'clearly established' at the time of the challenged conduct." *Partridge*, 929 F.3d at 565 (quoting *al-Kidd*, 563 U.S. at 735). Of course, "the general principle of the right to equal protection" based on sex "has been clearly established." *Bills*, 32 F.3d at 335.

But Doe must show more. *Id.*; *Hess v. Ables*, 714 F.3d 1048, 1051 (8th Cir. 2013) (burden of proof). She must show she had a clearly established equal-protection right that was beyond debate under the specific facts and circumstances of this case. *Bills*, 32 F.3d at 335; *Kisela*, 584 U.S. at ___, 138 S. Ct. at 1152. In other words, she must show that every reasonable official in the defendant's respective positions in this case would have understood they were unlawfully discriminating against Doe based on her sex. *See Mogard*, 932 F.3d at 1188.

Because Doe has not met that burden, her § 1983 claims are dismissed. *See Mitchell*, 472 U.S. at 526; *Calgaro*, 919 F.3d at 1059 ("Because existing precedent does not clearly

establish the rights that [the plaintiff] asserts, [the defendant] is entitled to qualified immunity.").

### D. Informal Request for Leave to Amend

At the end of her brief in opposition, Doe informally requests "leave to amend her complaint" if "the Court finds the pleadings insufficient." Although Federal Rule of Civil Procedure 15(a)(1) states that "the [C]ourt should freely give leave [to amend] when justice so requires," such leave "generally is inappropriate . . . where the plaintiff has not indicated how it would make the complaint viable, either by submitting a proposed amendment or indicating somewhere in its court filings what an amended complaint would have contained." *Pet Quarters, Inc. v. Depository Tr. & Clearing Corp.*, 559 F.3d 772, 782 (8th Cir. 2009); *see also Plymouth County v. Merscorp, Inc.*, 774 F.3d 1155, 1160 (8th Cir. 2014) ("[A] party is not entitled to amend a complaint without making a showing that such an amendment would be able to save an otherwise meritless claim.").

To that end, Federal Rule of Civil Procedure 7(b)(1) generally requires parties to request court orders by a written motion and "state with particularity the grounds for seeking the order" and "the relief sought." With respect to motions to amend in particular, Nebraska Civil Rule 15.1(a) provides

> A party who moves for leave to amend a pleading . . . must file as an attachment to the motion an unsigned copy of the proposed amended pleading that clearly identifies the proposed amendments. Except as stated in these rules or court order, the proposed amended pleading must be a complete pleading that, if allowed to be filed, supersedes the original pleading in all respects; no part of the prior pleading may be incorporated into the proposed amended pleading by reference. The motion for leave to amend must (1) specifically state the proposed amendments and (2) state whether the motion is unopposed or opposed, after conferring with opposing parties.

*Accord Wolgin v. Simon*, 722 F.2d 389, 395 (8th Cir. 1983) ("[T]o preserve the right to amend a complaint a party must submit a proposed amendment along with its motion.").

14

To the extent Doe intends that the Court treat her informal request for leave in her response brief as a written motion, it is denied. *See id.* (rejecting the plaintiff's request to construe an informal request for leave in a brief "as a motion for leave to amend"). Doe has neither complied with the applicable rules, *see Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909, 914 (8th Cir. 2002) ("All civil litigants are required to follow applicable procedural rules."), nor otherwise explained how she would cure the substantial deficiencies in her First Amended Complaint, *see Dudek v. Prudential Sec., Inc.*, 295 F.3d 875, 880 (8th Cir. 2002) (upholding denial of a request for leave to amend at the end of the plaintiffs' brief because they did not (1) "include a proposed amended pleading" as required by local rule, (2) "describe what changes they would make," or (3) specify what non-futile claims they would assert). Simply requesting a conditional "do-over" buried in a brief does not suffice.

Based on the foregoing,

IT IS ORDERED:
1. The defendants' Partial Motion for Judgment on the Pleadings (Filing No. 17) is granted as set forth above.
2. Plaintiff Jane Doe's informal conditional request for leave to amend is denied.

Dated this 23rd day of December 2020.

BY THE COURT:

Robert F. Rossiter, Jr.
United States District Judge