IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JANE DOE, and all others similarly situated, | |
| Plaintiff, | **4:20CV3036** |
| v. | |
| BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA, | **MEMORANDUM AND ORDER** |
| Defendant. | |

This matter is before the Court on defendant Board of Regents of the University of Nebraska's ("Board") Motion to Exclude Experts and Their Testimony (Filing No. 62). Plaintiff Jane Doe ("Doe") opposes (Filing No. 70) the motion. After careful review, the motion to exclude is granted in part and denied in part as stated below.

## I.    BACKGROUND

Doe was a student at the University of Nebraska ("University") College of Law. She alleges University employees failed to properly investigate her allegations of sexual assault and harassment at the University, in violation of Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 *et seq.*

To help prove her claim, Doe has designated Dr. Jennifer L. Johnson ("Dr. Johnson") and Codi Hatfield ("Hatfield") as experts. She states she designated them "to assist the trier of fact in understanding and determining issues of fact, sometimes in ways that the [Board] obviously has not understood."

The Board asks the Court to exclude them and their testimony "under Federal Rule of Evidence 702 and the Supreme Court's holding in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)." To the Board, their testimony is irrelevant and unreliable.

## II.     DISCUSSION

### A.     Legal Standard

As the Board points out, Rule 702 governs the admissibility of expert testimony in federal court.  *See*, *e.g.*, *Lauzon v. Senco Prod., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001). Under that rule,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702(a)-(d).

This Court acts as a gatekeeper, ensuring that expert testimony is both relevant and reliable.  *See Daubert*, 509 U.S. at 589.  "As the proponent of the expert testimony in question," Doe has "the burden to prove its admissibility by a preponderance of the evidence." *In re Bair Hugger Forced Air Warming Devices Prod. Liab. Litig.*, 9 F.4th 768, 776 (8th Cir. 2021).

To prove reliability, Doe must show "both that the expert is qualified to render the opinion and that the methodology underlying [her] conclusions is scientifically valid." *In re Wholesale Grocery Prod. Antitrust Litig.*, 946 F.3d 995, 1000 (8th Cir. 2019) (quoting *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757-58 (8th Cir. 2006)).  To prove relevance, Doe "must show that the reasoning or methodology in question is applied properly to the facts in issue." *Id.* (quoting *Marmo*, 457 F.3d at 758).

"Rule 702 is a rule 'of admissibility rather than exclusion.'"  *S&H Farm Supply, Inc. v. Bad Boy, Inc.*, 25 F.4th 541, 551 (8th Cir. 2022) (quoting *Jenson v. Eveleth Taconite Co.*, 130 F.3d 1287, 1298 (8th Cir. 1997)).  "Gaps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility." *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1101 (8th Cir. 2006) (quoting 29 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure: Evidence § 6265 (1997)).  Still, "[e]xpert testimony is inadmissible if it is speculative, unsupported by sufficient facts, or contrary to the facts of the case."  *Marmo*, 457 F.3d at 757.

### B.    Dr. Jennifer Johnson

Dr. Johnson states she is "a board-certified advanced practice registered nurse and board-certified advanced forensic nurse, and board-certified sexual assault nurse examiner for pediatrics, adults, and adolescents."  She has been a licensed nurse in Kansas since 1996 and a licensed nurse practitioner since 2002.  She obtained her Doctorate of Nursing Practice from Maryville University.  Doe's expert designation (Filing No. 69-2) states

> Generally, Dr. Johnson will testify regarding investigation of sexual assault and the impact of traumatic experiences in victim recollection and their relation to investigation of sexual assault. Dr. Johnson will also testify regarding the different methods and standards utilized in investigation of sexual assaults including medication assisted assaults.

Dr. Johnson's attached report sets forth thirteen numbered paragraphs outlining what she sees as "failures" by the Board and its investigators.

The Board does not dispute "Dr. Johnson's education and experience as a nurse practitioner."  Instead, it argues she is not qualified "to testify on the legality of [its] actions or inactions in response to [Doe's] alleged sexual assault by John Roe."  Closely examining Dr. Johnson's deposition testimony, the Board challenges her "numerous opinions related to whether" the Board and its investigators "met the applicable legal standard under Title IX" and "violated Title IX with the way it responded to [Doe's] allegations of sexual

assault or harassment."   In the Board's view, Dr. Johnson has no "superior skill" or "specialized knowledge on Title IX matters" and ignored critical facts in this case.

Doe responds by recounting Dr. Johnson's board certifications as a nurse and broadly describing her "significant experience and certification in forensic education on case investigation, death investigation, sexual assault and pattern of injuries."   According to Doe, "As a nurse practitioner with specialized experience and training in investigating sexual assaults, Dr. Johnson possesses the necessary specialized knowledge that can assist the trier of fact to understand what constitutes a sufficient investigation of a sexual assault." Doe's response is unconvincing.

First, to the extent Dr. Johnson proposes to offer an opinion as to whether the Board's investigation contravened Title IX, the opinion is inadmissible in these circumstances.  *See S. Pine Helicopters, Inc. v. Phx. Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003) ("[E]xpert testimony on legal matters is not admissible."); *cf. Williams v. Wal-Mart Stores, Inc.*, 922 F.2d 1357, 1360 (8th Cir. 1990) (noting expert "testimony is not objectionable merely because it embraces an ultimate issue" but can be excluded "if it is so couched in legal conclusions that it supplies the fact finder with no information other than what the witness believes the verdict should be").

Next, Rule 702 requires Doe to show "that the area of the witness's competence" matches the particular "subject matter of the witness's testimony."   *Shipp v. Murphy*, 9 F.4th 694, 701 (8th Cir. 2021) (internal marks omitted) (quoting *Robinson*, 447 F.3d at 1101).  Proving "a witness is qualified to testify as an expert on a particular subject requires a fact-intensive evaluation of their 'knowledge, skill, experience, training, or education.'" *Id.* at 705 (Kelly, J., concurring) (quoting Fed. R. Evid. 702); *see also Robertson v. Norton Co.*, 148 F.3d 905, 907 (8th Cir. 1998) (concluding an expert's qualifications on one subject "did not qualify him as an expert" on a related subject).  Doe makes little effort to carry her burden.

Doe does not provide any colorable basis for what she sees as the requisite standard of care for a proper Title IX investigation, let alone show that Dr. Johnson is qualified to give opinions about the Board's purported failure to comply with it. Doe generically touts Dr. Johnson's "extensive experience investigating sexual assaults" but fails to provide any specific details about that experience or tie it to her challenged opinions about the Board's alleged Title IX failures. Doe cannot expect the Court to explore Dr. Johnson's curriculum vitae in search of the required support.

The disconnect between Dr. Johnson's qualifications and those opinions is further demonstrated by Dr. Johnson's statements that she formed her opinions "to a reasonable degree of medical certainty" and based them upon her "years of education and practice in the field of nursing, advanced practice nursing, forensic nursing, providing direct medical evaluation and treatment, and testifying to the findings identified from the medical examination, forensic medical examination and forensic evidence obtained in the pediatric, adolescent, and adult populations." *See Shipp*, 9 F.4th at 701. As stated, Dr. Johnson's "academic training, licensure, and scope of practice do not qualify her to opine on" the adequacy of the Board's Title IX investigation. *Id.*

Put simply, Doe has not demonstrated Dr. Johnson has "sufficient 'specialized knowledge [to] help the trier of fact to understand the evidence or to determine a fact in issue.'" *Id.* (alteration in original) (quoting Fed. R. Evid. 702(a)). Her opinions range far beyond her particular area of expertise and often rest on shaky ground. *See Hirchak v. W.W. Grainger, Inc.*, 980 F.3d 605, 609 (8th Cir. 2020) ("[W]e must not permit an expert to proceed 'beyond [her] expertise.'" (quoting *Am. Auto. Ins. v. Omega Flex, Inc.*, 783 F.3d 720, 724 (8th Cir. 2015))).

But even if Doe could show the requisite expertise, it is not clear Dr. Johnson's proposed Title IX testimony would help the trier of fact as required by Rule 702(a). This Court "must guard against" permitting expert witnesses to invade "the province of the jury on a question which the jury was entirely capable of answering without the benefit of expert

opinion." *Hirchak*, 980 F.3d at 609 (quoting *Am. Auto. Ins.*, 783 F.3d at 725).  Doe has not adequately shown that the challenged testimony is beyond the jury's understanding or would be sufficiently helpful to justify "the risk that the jury might defer to the expert simply because of" Dr. Johnson's medical expertise.  *Id.*; *see also United States v. Ellsworth*, 738 F.2d 333, 336 (8th Cir. 1984) (finding "no basis upon which to conclude that the subject was beyond the common understanding of the jurors or that [the witness] could offer information that would ordinarily not be available to them").

That is not to say "Dr. Johnson is not qualified to provide expert testimony in this case" as the Board suggests.  Based on her qualifications, Dr. Johnson may be able to testify more generally about "the neurophysiology of trauma," "the impact of traumatic experiences in victim recollection and their relation to investigation of sexual assault," and similar matters, subject to timely objection by the Board if it believes the evidence is irrelevant or unreliable.

### C.   Codi Hatfield

Doe states "Hatfield is a registered mental health counselor in the state of Florida." She has "a bachelor's degree in psychology with a minor in social work as well as a master's degree in psychology from the University of West Florida."  According to Doe, Hatfield's proposed testimony relates to her work at Gulf Coast Children's Hospital.  Doe's expert designation states Hatfield treated her for eight months and "diagnosed her with [post-traumatic stress disorder ("PTSD")] and Depression."

The Board contends Hatfield's deposition reveals "Hatfield has not diagnosed [Doe] with PTSD or Depression" and was not given "sufficient facts to testify as to the causation element under Title IX."  The Board asks that Hatfield "be excluded from rendering a medical opinion as to causation or diagnosis."  The Board also asks the Court to exclude any testimony regarding emotional damage Doe suffered.  According to the Board, such evidence is irrelevant because the Supreme Court recently held "that emotional distress damages are not recoverable under the Spending Clause antidiscrimination statutes" like

6

Title IX.  *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. ___, ___, 142 S. Ct. 1562, 1576 (2022).

Doe concedes that the holding in *Cummings* generally precludes emotional-distress damages in Title IX cases like hers.  But she opines the Board's failure to argue in its brief in support of its motion for partial judgment on the pleadings that it was not aware that it was liable for emotional distress damages "waives any argument that [it] did not believe [it] would be liable for emotional distress damages, thereby meeting the burden set forth by the Cummings Court in order to sustain a claim for emotional distress damages in a Title IX action."  Doe grossly misreads *Cummings*.  Absolutely nothing in that case even remotely suggests the offbeat and unfounded theory of "waiver" she proposes.

Beyond emotional damages, Doe states in her brief that "Hatfield was *not* retained to testify as described by the" Board as to Doe's diagnoses of PTSD and depression.  Doe also fails to respond to the Board's argument that Hatfield cannot testify that the alleged sexual assault or ensuing investigation caused Doe's symptoms because "Hatfield admitted that she did not have" an adequate basis for such an opinion.  Doe's concession and failure to respond to the Board's arguments on that issue cede those aspects of the Board's motion.

That leaves only a few narrow issues related to causation and financial damages.  Doe asserts Hatfield can provide admissible evidence about the severity of the conduct Doe encountered; the reasons for her actions or inaction, including her need to leave the University; and the "actual financial damages she suffered as a result of leaving."

The Board reasonably questions whether Doe has established "an adequate basis and proper foundation for" Hatfield's remaining opinions.  Doe's vague assurance that her cited "portions of testimony are a brief snapshot of valuable testimony related to satisfying the elements or the claim" does not suffice.

The Court nonetheless finds—in light of the inchoate record before the Court—that such testimony is not so deeply flawed and unreliable as to be categorically inadmissible

7

at this point. *Cf.*, *e.g.*, *United States v. Aungie*, 4 F.4th 638, 645-46 (8th Cir. 2021) (noting the Eighth Circuit has upheld the admission of "expert testimony about the emotional and psychological traits of abuse victims that often account for behavior such as delay in reporting the abuse or failure to 'escape' the abusive situation" (quoting *United States v. Johnson*, 860 F.3d 1133, 1140 (8th Cir. 2017))). As always, the Board remains free to challenge Hatfield's testimony on cross and raise more-specific objections when the Court will have the benefit of a better record. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). The Court's ruling also does not preclude Hatfield from testifying as Doe's treating medical provider based on her records.

For the reasons stated above, defendant Board of Regents of the University of Nebraska's Motion to Exclude Experts and Their Testimony (Filing No. 62) is granted in part and denied in part.

IT IS SO ORDERED.

Dated this 18th day of August 2022.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge